**WESTCLOX CO. v. UNITED STATES.**

Court of Claims.· January 20, 1930.

No. E–402.

194

Thomas G. Haight, of Jersey City, N. J. (Robert H. Montgomery and J. Marvin Haynes, both of Washington, D. C., E. B. Wilkinson, of Chicago, Ill., and James O. Wynn, Jr., of New York City, on the briefs), for plaintiff.

Dwight E. Rorer, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN and GRAHAM, Judges.

BOOTH, Chief Justice. The plaintiff, an Illinois corporation, manufactures and sells clocks and clock movements. The business of the corporation is voluminous and its output large. In making its returns for income and excess profits taxes for the calendar years 1917 and 1918 the plaintiff was denied a deduction from its gross income for the years in issue for the exhaustion or depreciation of certain patents owned by it and acquired prior to March 1, 1913. No jurisdictional question is involved, and the right to the deduction is conceded under paragraph 7 of section 5 of the Revenue Act of 1916, 39 Stat. 756, 759.

The plaintiff establishes the value of the patents as of March 1, 1913, by proof of the "savings" accruing to it in the cost of manufacturing its clock movements. The method pursued is predicated upon the cost of manufacturing similar clock movements by its competitors, the comparison resulting in an economic benefit to the plaintiff of great value. The defendant does not challenge the adopted method. The defense is rested upon alleged error in computation, and asserted failure to consider all the factors entering into such a comparison.

On July 5, 1902, an employee of the plaintiff, Mr. Neureuther, applied for letters patent on an automatic machine for the manufacture of clock pinions and wheels. The Patent Office required the applicant to divide his application, and, upon compliance therewith issued to the plaintiff, as assignee of Neureuther, on February 21, 1905, patent No. 782,869, and on February 19, 1907, patent No. 844,389. On August 29, 1911, the plaintiff, as assignee, secured the issue of a design patent, No. 41,725, covering a specific design of alarm clocks. These three patents constitute the basis for plaintiff's suit.

The two patents, No. 844,389 and No. 782,869, for the purposes of this case, will be treated and spoken of as the machine patent No. 844,389. The defendant interposes objections to so doing. However, the record clearly establishes that both patents were owned by the plaintiff, both were used in combination in the operation of the machine, and the proportionate contribution of each to the result obtained by its use is obviously imma-

terial under the facts. Clearly, the plaintiff is entitled to allowances for patents owned by it, and while the petition alleges patents by number, the intent is to claim all. The confusion grows out of the technical mistake upon the part of the pleader to distinguish between patents and a machine. The plaintiff began the use of the machine in 1908. The patented machine is beyond disputation a valuable labor-saving device. The machine operated by a single operator automatically produces a finished product exacting minute accuracy and delicacy in its construction. By the simple process of supplying shaft and pinion wire from coils or reels, together with molten metal and blanked wheels and washers, watch wheels accurately and permanently adjusted to shafts, with small pinion wires held in proper relation thereto, are produced. Finding IX. Prior to the advent of the patent, watch wheels of the desired description, with shaft and pinion adjustments, were made by hand, a process involving the utilization of three workmen, and fraught with the disadvantage of many inaccuracies and considerable wastage. By the use of one of the patented machines and a single operator 5,000 wheels a day may easily be produced, with a negligible quantity of inaccuracies and wastage. Pinion wheels are the essential and predominant factors in clock making, and the plaintiff's needs mounted into the millions. The cost of producing 10,000 wheels by the machine method, for the years 1908 to 1912, including material, labor, and overhead, was in 1908, $212.14; 1909, $208.61; 1910, $238.24; 1911, $237.70; 1912, $242.52. The cost of producing the precise number of wheels over the same period of time, upon the same basis, by hand, would be, for 1908, $442.22; 1909, $439.02; 1910, $476.86; 1911, $470.25; 1912, $481.09—more than twice as much, except for the year 1911. With these figures as a basis, the average annual saving for the years involved, per 10,000 wheels, amounts to $234.05. The plaintiff manufactured during the period 7,102,653 watch wheels, and its annual average increase per annum for the use of wheels during the period amounted to 155,000, in round numbers. Patent No. 844,389 expired February 19, 1924, and patent No. 782,869 expired on February 21, 1922, giving an average expiration date of the two patents of February 20, 1923, or, as set forth in finding XVII, an average life of the two patents of approximately 10 years from March 1, 1913. Taking, then, the estimated number of wheels to be made in 10 years from March 1, 1913, as computed in finding XVII, the total number of parts would equal 25,822,663, resulting in a total saving of $604,-

379.43, on the basis of an average saving of $234.05 for 10,000 wheels. This results by the application of Hoskold's formula—resort to which is not contested—in a patent worth as of March 1, 1913, spread over 10 years to March 1, 1923, of $370,121.96. Finding XVIII. The defendant objects, as previously observed, not so much to the method of ascertaining the patent worth as of March 1, 1913, but to what are said to be inaccurate and unreliable bases. We think we have met the defendant's criticism in the computation set out in the findings in all vital respects, and, in the absence of any other available source of ascertaining value or any suggested method more clearly reflecting worth, we believe the method pursued to be reliable. A patented labor-saving machine, wherein expense is greatly curtailed and output vastly multiplied, a machine which produces the essential factors of the manufacturer's product, with no loss of material, with the degree of accuracy required and in quantities sufficient to meet its trade, is entitled to be valued upon the basis of savings accruing to the user, ascertained by comparison with the cost and expense incident to the old and prior processes employed in the trade. The growth of the plaintiff's business, the obvious advantage in cost of production over its competitors, its ability to meet the increased demand for its product, together with the fact that the clocks produced were equal in all respects to others in the trade, attest in figures what the patents were worth to the plaintiff. To be able to produce at a minimum of cost and saving in labor and overhead, ascertained by comparison with the actual expense of others engaged in doing the identical thing by hand, the essential elements of a product offered to the public for sale, surely affords an accurate criterion for measuring value. The result is predicated upon actual figures, is not conjectural, and affords a basis of actualities from which the essential deductions may logically flow.

Design patent No. 41,725 issued to plaintiff was limited to 14 years. It was issued to plaintiff on August 29, 1911. The plaintiff made and sold a large number of clocks in accord with the patented design. The clocks so made and sold were known and advertised as the "Big Ben" and "Baby Ben." The plaintiff pursued the custom of marketing its various makes and designs of clocks under distinct names. In January, 1909, the plaintiff received a registered trade-mark "Big Ben" and thereafter manufactured and sold, in addition to its other line of clocks, a line designated as "Big Ben." From 1910 to 1913 large sums of money were expended for ad-

vertising plaintiff's products, and the amounts so expended were allocated to the different makes of clocks and the proceeds of the sale of the same charged with their proportional part thereof as cost of manufacture. The profits from the sale of "Big Ben" clocks by this method of bookkeeping disclosed a greater profit for plaintiff from "Big Ben" sales than other lines. In 1910 the plaintiff made and sold another line of clocks known and designated as "Baby Ben." By the same process of bookkeeping previously alluded to, the "Baby Ben" sales reflected the same result. On October 17, 1911, the plaintiff procured a registered trade-mark for the "Baby Ben." The demand for plaintiff's clocks is indicated in the record as follows: "Big Ben," "Baby Ben," and "America," the last being the trade-name distinguishing the line from the "Big Ben" and "Baby Ben." The design of the "Big Ben" and "Baby Ben" was identical; the difference, as the names import, was one exclusively of size. There was from 1909 to 1913 a difference in the mechanical construction of the "Big Ben" and "Baby Ben" and the "America" clocks. The "Big Ben" and "Baby Ben" clocks were so constructed as to afford a longer alarm than the "America" clocks and were also of the repeater type, i. e., the alarm repeated until stopped. While there existed no radical difference between the movements of the two types, the "Big Ben" and "Baby Ben" were of a more engaging appearance. The "America" was distinctly an alarm clock, one in appearance, with the alarm mounted on the top, while the "Big Ben" and "Baby Ben" disclosed no alarm features, the same being concealed. It is therefore apparent that the value to be attached to the design patent is to be ascertained by a segregation of the features and the intense advertisement of the type, in order to arrive at patent worth as of March 1, 1913. It is of course impossible to arrive at this value with mathematical exactness. Design of an article undoubtedly has its worth. Shape and form appeal to taste, and the sales of the "Big Ben" and "Baby Ben" in comparison with the "America" attest this fact. The single available method open to the court upon this record is to take the same as we find it, and apportion value to the patent in the light of the business experience of the plaintiff company. This we have done in findings XIX, XX, XXI, XXII, XXIII, XXIV, XXV, and XXVI. The result attained is arrived at from the plaintiff's books of account. The sums used are not disputed, and we think reflect an accurate value. More than the design of the "Big Ben" and "Baby Ben" contributed to the output. Additional mechanical features, trade-marks, and intensive advertising, had as much to do with the marketing of the clocks as design. Each added feature afforded a distinct appeal, and the names adopted identified the product. Trade-marks often develop into great worth, and the record herein sustains a finding as to their worth when applied to the design clocks. Beyond doubt, the design above was not the exclusive factor which brought about the large and increasing demand for the design clocks.

The case will be remanded to the general docket with leave to the parties to compute and stipulate the amount of refund due for the years 1917 and 1918, in accord with the findings and opinion of the court. Judgment will be reserved until the case is resubmitted as per this order. It is so ordered.

GREEN and GRAHAM, Judges, concur.
WILLIAMS and LITTLETON, Judges, did not hear and took no part in the decision of this case.